

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

| | |
|---|---|
| **THOMAS JOHN ALSTON**, *an individual* <br> 10012 Cedarhollow Lane <br> Largo, Maryland 20774 <br><br> **JONATHAN TABB ALSTON**, *an individual* <br> 10012 Cedarhollow Lane <br> Largo, Maryland 20774 <br><br> *on behalf of themselves and* <br> *all others similarly situated* <br><br> Plaintiffs, <br><br> v. <br><br> **EQUIFAX INFORMATION SERVICES, LLC** <br> Serve: CSC-Lawyers Incorp Srvc Co. <br> 7 Saint Paul Street, Suite 820 <br> Baltimore, Maryland 21202 <br><br> Defendant, <br><br> **EXPERIAN INFORMATION SOLUTIONS, INC** <br> Serve: The Corporation Trust Incorporated <br> 351 West Camden Street <br> Baltimore, Maryland 21201 <br><br> Defendant, <br><br> **TRANSUNION, LLC** <br> Serve: CSC-Lawyers Incorp Srvc Co. <br> 7 Saint Paul Street, Suite 820 <br> Baltimore, Maryland 21202 <br><br> Defendant, <br><br> **LEXISNEXIS RISK SOLUTIONS INC.** <br> Serve: The Corporation Trust Inc. <br>     351 W. Camden Street <br>     Baltimore, Maryland 21201 <br><br> Defendant. | Case No. CAL15-25162 |

## COMPLAINT AND JURY TRIAL DEMAND
### (CLASS ACTION)

COMES NOW the Plaintiffs, Thomas John Alston and Jonathan Tabb Alston, on behalf of themselves and all others similarly situated, bring this complaint against the Defendants, and alleges as follows:

### PRELIMINARY STATEMENT

1. This is a consumer class action brought for willful violation of the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq. ("FCRA"), against Defendants Equifax Information Services, Llc ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union") and LexisNexis Risk Solutions, Inc. ("LexisNexis"). Defendants Equifax, Experian and Trans Union consciously omit the actual source of reporting for its public records. In its credit reports, reinvestigation results, and description of reinvestigations to consumers Defendants identify the public entity -- government, court or courthouse -- as the true and only source for reported information of the public record. In fact, Defendants do not rely on the public entity for the reported record but instead rely on an undisclosed third-party vendor. Equifax's omission is especially egregious being that Equifax has already been chastised about this practice. See Chakejian v. Equifax Info. Srvcs, LLC, 275 F.R.D. 201 (E.D. Pa. Jun. 15, 2011). Despite promising to stop its practice of misleading consumers Equifax continues to deliberately and systematically deceive and/or mislead consumers in direct violation of FCRA's requirement to disclose the sources of reported credit information.

### PARTIES

2. The Plaintiff is a natural person and a "consumer" as defined by FCRA.

3. Equifax is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f).

4. Experian is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f).

5. Trans Union is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f).

6. LexisNexis collects and furnishes public record information to consumer reporting agencies.

## FACTUAL ALLEGATIONS REGARDING EQUIFAX

### As To Plaintiff Thomas Alston

7. In June 2013 Equifax was inaccurately reporting that Plaintiff Thomas Alston had a $18,984 Federal lien. Equifax identified the Washington DC Recorder of Deeds as the source of the information being reported for the federal tax lien.

8. On or about June 24, 2013 Plaintiff sent letters to Equifax and the DC Recorder of Deeds disputing the accuracy of the reporting.

9. Equifax responded on July 22, 2013 with reinvestigation results, which continued to report the lien and requested Plaintiff to send documents that release him from the obligation. Once again Equifax identified the DC Recorder of Deeds as the source of the reported information.

10. Although Plaintiff disputed the public record the Defendant and/or LexisNexis failed to notate the public record as disputed.

11. As requested by Equifax, Plaintiff sent another dispute enclosed with a copy of the Certificate of Release of Federal Tax Lien to Equifax on July 31, 2013.

12. Rather than providing Plaintiff with the results of its investigation as mandated by the FCRA, on August 9, 2013 Equifax sent Plaintiff a letter requesting "additional information in order to verify your identification and address." Equifax claimed "the information [] provided as proof of identity d[id] not match [the] information currently on file." Plaintiff's July 13, 2013

letter was nearly identical to his June 24, 2013 dispute except for the enclosure of the requested Release.

13.   No provision in the FCRA provides Equifax a reason to withhold an investigation or the results of an investigation with the exception of a deeming a dispute frivolous.

14.   On September 11, 2013 Plaintiff sent another dispute but included his social security number as further identification. Plaintiff did not include any of the forms of identification requested by Equifax in its August 9, 2013 letter.

15.   Equifax responded on October 14, 2013 to Plaintiff's dispute with its reinvestigation results, which stated "[w]e have verified that this item has been reported correctly" and to contact the Washington DC Recrdr for "additional question about this item."

16.   In correspondence dated October 28, 2013 Plaintiff requested Equifax provide a description of the investigation, including the business name and address of the furnisher of information contacted.

17.   Equifax provided its purported description of its investigation on November 8, 2013. In its description Equifax states that it "may use a business vendor to obtain the most recent filing from the public record source" but does disclose the vendor. Instead, Equifax misdirects the consumer back to the "Results of your investigation" for the "name, address and, if reasonably available, the telephone number of the furnisher(s)/source(s) of the information contacted while processing your disputes)." Under the "Results of your investigation" is one source, which is the public entity DC Recorder of Deeds. No other furnisher/source is identified, such as the business vendor referred to in its description.

18.   Unsatisfied with Equifax's response Plaintiff submitted on January 27, 2014 another request for contact information of the furnisher of the information for the Federal lien. In

4

this dispute Plaintiff specifically requested Equifax provide the contact information of any furnisher relied on other than the Washington DC Recorder.

19. On February 17, 2014 Equifax provided Plaintiff with the results of its investigation, which provided *only* contact information for the Washington DC Deed Recrdr.

20. Plaintiff quickly followed up on February 25, 2014 with another request for description. This time Plaintiff explicitly requested the contact information for the business vendor or any other source(s)/furnisher(s) involved in the investigation of Plaintiff's dispute.

21. Equifax provided its purported description of its investigation in March 2014 where it stated that it "may use a business vendor to obtain the most recent filing from the public record source" and that the source(s)/furnisher(s) of the reported public record can be found under the "Results of your investigation" section on the cover letter that accompanies the copy of the revised credit file. The business vendor is never disclosed in the "Results of your investigation section" of the cover letter. The only source disclosed in the "Results of your investigation" is the public entity such as Washington DC Deed Recrdr.

22. Despite referring to the *business vendor as a furnisher* of information in its description of investigation, Equifax deliberately omits and conceals the name, address and telephone number of its vendor. Rather than provide the contact information of any and all furnishers (including its vendor) as mandated by the FCRA, Equifax only provides the contact information for the public entity even though it is the vendor, not the public entity, that is furnishing the information to Equifax. At a minimum, both the vendor and the public entity should be identified as the source of the information for the public record.

23. The fact is that the WASHINGTON DC RECORDER does not report information to Equifax. It is the vendor that reports the public record information to Equifax. If any source of

5

the information should be omitted, it would be the public entity since it is not the direct source providing the information to Equifax.

24. Because Equifax wishes to conceal the identity of its vendor it has made a conscious decision to disregard the Plaintiff's rights for disclosure of the source and to misrepresent not only that the public entity is the direct source, but the only reporting source.

25. There can be no doubt that Equifax's failure to disclose all the sources is done full understanding that such actions constitute willful violations of the FCRA. As noted in the preliminary statement Equifax has been sued recently for this exact same matter. In Chakejian Equifax agreed not to "represent that the government, a court, or courthouse is the furnisher of information in response to a consumer's dispute, nor will Equifax represent that the government, a court, or courthouse was contacted directly by Equifax or actually investigated a consumer's dispute." Despite this agreement prohibiting such false representations Equifax still falsely represents that a public entity is being contacted by Equifax with such statements as "[t]he name, address and, if reasonably available, the telephone number of the **furnisher(s)/source(s) of the information** *contacted* while processing your dispute(s) is show under the 'Results of your investigation' section on the cover letter that accompanies the copy of your revised credit file" when Equifax knows only the public entity is listed in the "Results of your investigation" section.

26. Equifax's misrepresentation of the source of its reporting is carried out systemically through the issuance of its credit reports, results of investigations and descriptions of investigations that were provided to the Plaintiff.

27. At all times pertinent hereto, Defendant's conduct was willful, and carried out in reckless disregard for Plaintiff's consumer rights as set out in 15 U.S.C. §§1681e(b), 1681g(a)(2), 1681i(a)(6) and 1681i(a)(7).

### As To Plaintiff Jonathan Alston

28. Equifax also reported a public record to Plaintiff Jonathan Alston's credit report. Specifically, in December 2013 Equifax was reporting a lien to Plaintiff's credit report and referenced Prince George Circuit Ct as the source of the reporting.

29. Plaintiff disputed the reporting and on December 27, 2013 Equifax responded by verifying the item as being reported correctly. Equifax further stated that additional information was provided by the original source of the information and to contact Prince George Circuit Ct with any additional questions.

30. Although Plaintiff disputed the public record, the Defendant and/or LexisNexis failed to notate the public record as disputed.

31. In June or July 2014 Plaintiff disputed the lien again. Equifax responded on July 14, 2014 with its reinvestigation results, which stated that the lien had been deleted from the credit file and instructed Plaintiff to contact Prince George Circuit Ct with any questions regarding the lien.

32. Equifax's misrepresentation of the source of its reporting is carried out systemically through the issuance of its credit reports, results of investigations and descriptions of investigations that were provided to the Plaintiff.

33. At all times pertinent hereto, Defendant's conduct was willful, and carried out in reckless disregard for Plaintiff's consumer rights as set out in 15 U.S.C. §§1681e(b), 1681g(a)(2), 1681i(a)(6) and 1681i(a)(7).

### FACTUAL ALLEGATIONS REGARDING EXPERIAN

### As To Plaintiff Thomas Alston

34. On or about August 14, 2013, Plaintiff Thomas Alston obtained his Experian

credit report and learned that Experian was reporting an unpaid federal tax lien.

35. The public record reporting was inaccurate for the tax lien had been paid and released in June 2013.

36. The Experian credit report listed the WASHINGTON DC RECORDER as the source of the information being reported for the federal tax lien.

37. The Plaintiff immediately contacted the WASHINGTON DC RECORDER to inquire about the federal tax lien and was advised that the tax lien had been released. The Plaintiff also sent a letter to the WASHINGTON DC RECORDER to demand that it stop the inaccurate reporting of the tax lien.

38. In addition to sending a letter to the WASHINGTON DC RECORDER, the Plaintiff sent a letter disputing the public record to Experian.

39. Experian responded to Plaintiff's dispute by informing the Plaintiff that it would not process his dispute because he did not provide his social security number.

40. On or about November 29, 2013 Plaintiff disputed the public record again. In his dispute he explained that the lien had been released and that the public record reported was inaccurate and needed to be deleted.

41. Experian responded on December 12, 2013 by issuing its "Dispute Results" of Plaintiff's dispute. The reporting was "Updated" to indicate the tax lien was paid and released. The Washington DC Recorder was identified as the source of the reporting. No other source(s) were identified for the reporting.

42. Although Plaintiff disputed the public record, the Defendant and/or LexisNexis failed to notate the public record as disputed.

43. The "Dispute Results" further stated that "[i]f you still question an item, then you


may want to contact the furnisher of the information directly or review the original information in the public record." The only contact information provided was for the Washington DC Recorder. Experian made no mention of a third-party vendor as the actual source of the reporting.

44. Also provided was an enumeration of certain Plaintiff's rights under the Fair Credit Reporting Act. One of the enumerated rights was that "[t]he federal Fair Credit Reporting Act provides that you may [] request a description of how we processed your dispute, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number if reasonably available".

45. On or about December 21, 2013 Plaintiff "request[ed] a description of how Experian processed [his] dispute." He specifically asked for the "business name, address and telephone number of any furnisher(s) of information contacted in connection with the investigation of [his] dispute."

46. Experian responded with a description of its investigation on January 22, 2014 where it stated that Experian "contact[s] the furnisher of the information or the vendor that collected the information". Experian further announced that Plaintiff could also dispute the "information in your credit report directly with the furnisher of the information." It concluded by advising the Plaintiff to contact the furnisher of information directly and to refer to the "original personal credit report for the furnisher or public records office name, address, and phone number (if available)."

47. Although Experian states the Plaintiff can obtain the name and address of the furnisher from his credit report, Experian does not provide the name and address of the furnishing vendor on his credit report. Instead, Experian only provides contact information for

9

the Washington DC Recorder.

48. Despite referring to the *vendor as a furnisher* of information in its description of investigation, Experian deliberately omits and conceals the name, address and telephone number of its vendor. Rather than provide the contact information of any and all furnishers (including its vendor) as mandated by the FCRA, Experian only provides the contact information for the public entity even though it is the vendor, not the public entity, that is furnishing the information to Experian. At a minimum, both the vendor and the public entity should be identified as the source of the information for the public record.

49. The fact is that the WASHINGTON DC RECORDER does not report information to Experian. It is the vendor that reports the public record information to Experian. If any source of the information should be omitted, it would be the public entity since it is not the direct source providing the information to Experian.

50. Because Experian wishes to conceal the identity of its vendor it has made a conscious decision to disregard the Plaintiff's rights for disclosure of the source and to misrepresent not only that the public entity is the direct source, but the only source of the reporting.

51. Experian's misrepresentation of the source of its reporting is carried out systemically through the issuance of its credit reports, dispute results and description of investigation that were provided to the Plaintiff.

52. At all times pertinent hereto, Defendant's conduct was willful, and carried out in reckless disregard for Plaintiff's consumer rights as set out in 15 U.S.C. §§1681e(b), 1681g(a)(2), 1681i(a)(6) and 1681i(a)(7).

**FACTUAL ALLEGATIONS REGARDING TRANS UNION**

## As To Plaintiff Jonathan Alston

53. In February 2014 Trans Union was inaccurately reporting that Plaintiff Jonathan Alston had a $938 tax lien. Trans Union identified the Prince George's Circuit court as the source of the information for the reported tax lien.

54. Thereafter, Plaintiff sent a letter disputing the tax lien to Trans Union.

55. Trans Union responded on March 14, 2014 with investigation results, which continued to report the lien and continued to identify the Prince George's Circuit court as the source of the reported information.

56. Although Plaintiff disputed the public record, the Defendant and/or LexisNexis failed to notate the public record as disputed.

57. On March 19, 2014 Plaintiff requested a description of the investigation and the contact information for the source of information.

58. On April 3, 2014 Trans Union sent Plaintiff a description of its Investigation Procedure and a list of sources of the personal information reported on Plaintiff's credit file.

59. Included in the list of sources was Choice Point as the source of information for Prince Georges Circuit Court.

60. On September 11, 2013 Plaintiff sent another dispute but included his social security number as further identification. Plaintiff did not include any of the forms of identification requested by Equifax in its August 9, 2013 letter.

61. Equifax responded on October 14, 2013 to Plaintiff's dispute with its reinvestigation results, which stated "[w]e have verified that this item has been reported correctly" and to contact the Washington DC Recrdr for "additional question about this item."

62. In correspondence dated October 28, 2013 Plaintiff requested Equifax provide a

11

description of the investigation, including the business name and address of the furnisher of information contacted.

63. Equifax provided its purported description of its investigation on November 8, 2013. In its description Equifax states that it "may use a business vendor to obtain the most recent filing from the public record source" but does disclose the vendor. Instead, Equifax misdirects the consumer back to the "Results of your investigation" for the "name, address and, if reasonably available, the telephone number of the furnisher(s)/source(s) of the information contacted while processing your disputes)." Under the "Results of your investigation" is one source, which is the public entity DC Recorder of Deeds. No other furnisher/source is identified, such as the business vendor referred to in its description.

64. Unsatisfied with Equifax's response Plaintiff submitted on January 27, 2014 another request for contact information of the furnisher of the information for the Federal lien. In this dispute Plaintiff specifically requested Equifax provide the contact information of any furnisher relied on other than the Washington DC Recorder.

65. On February 17, 2014 Equifax provided Plaintiff with the results of its investigation, which provided *only* contact information for the Washington DC Deed Recrdr.

66. Plaintiff quickly followed up on February 25, 2014 with another request for description. This time Plaintiff explicitly requested the contact information for the business vendor or any other source(s)/furnisher(s) involved in the investigation of Plaintiff's dispute.

67. Equifax provided its purported description of its investigation in March 2014 where it stated that it "may use a business vendor to obtain the most recent filing from the public record source" and that the source(s)/furnisher(s) of the reported public record can be found under the "Results of your investigation" section on the cover letter that accompanies the copy

of the revised credit file. The business vendor is never disclosed in the "Results of your investigation section" of the cover letter. The only source disclosed in the "Results of your investigation" is the public entity such as Washington DC Deed Recrdr.

68. Despite referring to the *business vendor as a furnisher* of information in its description of investigation, Equifax deliberately omits and conceals the name, address and telephone number of its vendor. Rather than provide the contact information of any and all furnishers (including its vendor) as mandated by the FCRA, Equifax only provides the contact information for the public entity even though it is the vendor, not the public entity, that is furnishing the information to Equifax. At a minimum, both the vendor and the public entity should be identified as the source of the information for the public record.

69. The fact is that the WASHINGTON DC RECORDER does not report information to Equifax. It is the vendor that reports the public record information to Equifax. If any source of the information should be omitted, it would be the public entity since it is not the direct source providing the information to Equifax.

70. Because Equifax wishes to conceal the identity of its vendor it has made a conscious decision to disregard the Plaintiff's rights for disclosure of the source and to misrepresent not only that the public entity is the direct source, but the only source.

71. There can be no doubt that Equifax's failure to disclose all the sources is done full understanding that such actions constitute willful violations of the FCRA. As noted in the preliminary statement Equifax has been sued recently for this exact same matter. In Chakejian Equifax agreed not to "represent that the government, a court, or courthouse is the furnisher of information in response to a consumer's dispute, nor will Equifax represent that the government, a court, or courthouse was contacted directly by Equifax or actually investigated a consumer's

dispute." Despite this agreement prohibiting such false representations Equifax still falsely represents that a public entity is being contacted by Equifax with such statements as "[t]he name, address and, if reasonably available, the telephone number of the **furnisher(s)/source(s) of the information** *contacted* while processing your dispute(s) is show under the 'Results of your investigation' section on the cover letter that accompanies the copy of your revised credit file" when Equifax knows only the public entity is listed in the "Results of your investigation" section.

72. Equifax's misrepresentation of the source of its reporting is carried out systemically through the issuance of its credit reports, results of investigations and descriptions of investigations that were provided to the Plaintiff.

73. At all times pertinent hereto, Defendant's conduct was willful, and carried out in reckless disregard for Plaintiff's consumer rights as set out in 15 U.S.C. §§1681e(b), 1681g(a)(2), 1681i(a)(6) and 1681i(a)(7).

## CLASS ACTION ALLEGATIONS

74. Plaintiff bring this action individually and as a class action, on behalf of the following Classes:

> **Section 1681g Class**
> All consumers in the state of Maryland to whom, beginning two years prior to filing this Complaint and continuing through the resolution of this action, requested from Defendants and received a document that identified a public entity, such as government agency or court, as the furnisher of information of a public record or received a letter from Defendants in responses to a dispute or request that identified a public entity as the source or furnisher of information.
>
> **Section 1681s Class**
> All consumers in the state of Maryland to whom, beginning two years prior to filing this Complaint and continuing through the resolution of this action, disputed a public record with the Defendants and did not have their credit report updated or notated as in a dispute status.

75. On information and belief, the Classes is so numerous that joinder of all members

is impracticable. The names and addresses of class members are identifiable through documents maintained by the Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice. Although the precise number of Class members is known only to Defendants, Defendants handle hundreds if not thousands of consumer reports containing public record information, and Plaintiff estimates that class size numbers in the hundreds, if not thousands.

76. Common questions of law and fact exist as to all members of each class. These questions predominate over the questions affecting only individual members. The principal question of common legal and factual questions include, among other things:

   a. Whether Defendants' reporting of the public entity as the source of information for the reporting of the public record was accurate and complete;

   b. Whether Defendants knew that a third party vendor was the actual furnisher of credit reporting information at issue in this case;

   c. Whether Defendants received a consumer dispute of a public record;

   d. Whether Defendants notated the public record as disputed;

   e. Whether Defendants knowingly and intentionally committed an act in conscious disregard of the rights of the consumer, or whether it did so recklessly; and

   f. Whether Defendants' conduct violated the FCRA.

77. Plaintiffs' claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same causes of action.

78. Plaintiffs are adequate representatives of the classes because their interests coincide with interests of the members of the classes they seek to represent; they will retain counsel competent and experienced in such litigation; and they intend to prosecute this action

vigorously. Neither Plaintiffs nor their counsel will have any interests which might cause them not to vigorously pursue these claims. The interests of members of the Classes will be fairly and adequately be protected by Plaintiffs and their counsel.

79. Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Classes to individually and effectively redress the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

### COUNT ONE: 15 U.S.C. §1681e&g FIRST CLASS CLAIM

80. Plaintiffs incorporate paragraphs 1-79 by reference.

81. Defendants Equifax, Experian and Trans Union violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding the named Plaintiffs and the putative members of the Section 1681g Class.

82. Defendants violated 15 U.S.C. §1681g(a)(2) as to the named Plaintiff and each

member of the putative the Section 1681g Class by failing to clearly and accurately disclose the source of the public record appearing on Plaintiffs' and each member of Section 1681g Class' credit report.

83. Pursuant to 15 U.S.C. §1681n, Defendants are liable for statutory and punitive damages, as well as attorney fees and costs, in an amount to be determined by the Court for violating 15 U.S.C. §1681e(b)&g(a)(2).

### COUNT TWO: 15 U.S.C. §1681i SECOND CLASS CLAIM

84. Plaintiffs incorporate paragraphs 1-79 by reference.

85. Plaintiff also seeks to maintain this action on behalf of a subclass consisting of the following:

> All individuals in the Section 1681g class described in paragraph 74 above who disputed the public record and received a document (i.e. Reinvestigation results, dispute results, etc.) in response to their dispute that inaccurately identified the Washington DC Recrdr as the furnisher of information of a public record.

86. Defendants Equifax, Experian and Trans Union violated 15 U.S.C. §1681i(a)(6) by failing to provide accurate information in its reinvestigation results provided to the named Plaintiff and the putative members of the subclass.

87. Defendants violated 15 U.S.C. §1681i(a)(7) as to the named Plaintiff and each member of the putative subclass by failing to provide the identity and contact information of the furnisher of information in its reinvestigation of the public record reporting.

88. Pursuant to 15 U.S.C. §1681n, Defendants are liable for statutory and punitive damages, as well as attorney fees and costs, in an amount to be determined by the Court for violating 15 U.S.C. §1681i(a).

### COUNT THREE: 15 U.S.C. §1681s THIRD CLASS CLAIM

89. Plaintiffs incorporate paragraphs 1-79 by reference.

90. Defendant LexisNexis violated FCRA at §1681s-2(b)(1)(A)-(D) by failing to note Plaintiffs and the putative members of Section 1681s Class' continuing dispute.

91. Upon information and belief Defendant LexisNexis is an agent of the three defendant credit reporting agencies.

92. As a principal to their agent LexisNexis and/or other third-party vendors, the defendant credit reporting agencies Equifax, Experian and Trans Union are responsible for information furnished regarding the public record. Accordingly, Defendants Equifax, Experian and Trans Union violated FCRA at §1681s-2(b)(1)(A)-(D) by failing to notate Plaintiffs and the putative members of Section 1681s Class' continuing dispute.

93. Defendants received Plaintiffs' and the putative members of the Section 1681s Class' disputes and know the public record reportings were under dispute.

94. Despite knowing the public records were disputed and that the Fourth Circuit requires a disputed reporting to notate such a dispute, see Sanders v. BB&T, 526 F.3d 142 (4th Cir. 2008), the Defendants consciously refuse or recklessly fail to report the public record as in a disputed status.

95. Pursuant to 15 U.S.C. §1681n, Defendants are liable for statutory and punitive damages, as well as attorney fees and costs, in an amount to be determined by the Court for violating 15 U.S.C. §1681i(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in his favor for the following:

(a)   Certification of each putative Class and Subclass;

(b)    Judgment for statutory damages against Defendants on each class claim in an amount between $100 and $1,000 per violation per Class member, pursuant to 15 U.S.C. 1681n(a)(1)(A);

(c)    Judgment for punitive damages against Defendants on each class claim pursuant to 15 U.S.C. 1681n(a)(2);

(d)    Approval of an incentive award for each Plaintiff in the amount of $25,000;

(e)    Award costs and attorney's fees pursuant to 15 U.S.C. 1681n(a)(3); and

(f)    Any such other relief the Court deems just, equitable and proper;

### DEMAND FOR TRIAL BY JURY

96.    Plaintiffs hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

THOMAS ALSTON

*(signature)*

Thomas Alston
10012 Cedarhollow Ln
Largo, MD 20774
(301) 350-5780
*Pro Se Plaintiff*

JONATHAN ALSTON

*(signature)*

Jonathan Alston
10012 Cedarhollow Ln
Largo, MD 20774
(301) 350-5780
*Pro Se Plaintiff*